IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMIE C. HOSS,

        Plaintiff,

v.                                                                 Case No. 13-2206-JTM

THE ART INSTITUTES
INTERNATIONAL-KANSAS
CITY, INC. and EDUCATION
MANAGEMENT CORP.,

        Defendants.

MEMORANDUM AND ORDER

Plaintiff Amie C. Hoss filed suit against the defendants in this case on May 3, 2013, alleging hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964. The case comes before the court on the defendants' Motion for Summary Judgment (Dkt. 38). Having reviewed the briefs, the court is prepared to rule.

## I. Undisputed Facts

Plaintiff Amie C. Hoss worked for defendant The Art Institutes International–Kansas City, Inc. (the School)[1] as an Assistant Director of Admissions from April 25, 2011 through May 3, 2012. Hoss reported first to Arthur Ripley and then to Angela Vietti, the Senior Director of Admissions. At the date of her termination, Hoss was one of more than twenty employees working as an Assistant Director of Admissions, 60% of whom were female.

---

[1]The Art Institutes International–Kansas City, Inc. is owned by Education Management Corporation, the other defendant in this case. The court refers to both defendants collectively as "the School."

*Hoss's Performance Evaluations*

Hoss received formal evaluations on her performance during the prior quarter. In this review process, a supervisor—either Ripley or Vietti—filled out a electronic form grading Hoss in three areas: individual goals, universal goals and competencies. Each area included several subsections. Hoss earned one of three ratings on each subsection: (1) below performance expectations, (2) meets performance expectations and (3) exceeds performance expectations. Based on the ratings of the subsections, the supervisor would assign a rating to each area. Each area receives a weigted percentage of the final overall rating: 40% for individual goals, 30% for universal goals and 30% for competencies. Based on these weighted percentages and the ratings assigned by the supervisor, the review form itself calculates the employee's overall rating. If the employee's overall rating is below performance expectations, the employee receives a Formal Warning Notice.

In her Fiscal Year 2012 first quarter performance review, which covered the period of June 25, 2011 through September 23, 2011, Hoss's supervisor Ripley rated her "below performance expectations" for two out of three of her individual goals, one of the universal goals and several competencies. Hoss had generated seven applications in the period, well short of her individual goal of twenty-one. She was responsible for starting four new students and generated only two. Overall, however, the review stated that Hoss "meets performance expectations" overall.

In her Fiscal Year 2012 second quarter performance review, which covered the review period from September 24, 2011 through December 23, 2011, Vietti rated Hoss

"below performance expectations" in individual goals, one of the universal goals and two competency subsections. Hoss had generated only five applications despite her goal of twenty-four, and she achieved three new starts despite her goal of nine. Hoss's overall rating was "below performance expectations." The School sends employees a warning letter, called a Formal Warning Notice, when they fail to meet expectations. As a result of her unsatisfactory performance review, Hoss received a Formal Warning Notice dated January 30, 2012, which stated:

> It is expected that you will meet or exceed all performance expectations for your position this quarter, including those outlined in this letter. If you fail to do so, I will re-evaluate the situation to determine if more time for improvement is warranted or if you should be removed from your position and your employment with the company terminated.

Dkt. 39, Exh. A, p. 45–46. Hoss testified that after receiving this notice, she understood that the School was contemplating terminating her employment if her performance did not improve. *Id.* at 46.

In her Fiscal Year 2012 third quarter performance review, which covered the review period from December 24, 2011 through March 23, 2012, Vietti rated Hoss "below performance expectations" in individual goals, one universal goal and several competencies. Again, she fell short of her applications goal of twenty-four, generating only six applications this quarter. She also fell short of her new starting student goal of three, generating only one. Hoss's overall rating was "below performance expectations" once again.

*Sexual Harassment*

While working at the School, Hoss experienced sexual harassment by a co-worker, Luis Nunez. In December of 2011, Hoss attended a week-long training in Pasadena, California with Nunez and Stephanie Finkelstein, another co-worker. In Pasadena, Nunez did several things that made Hoss feel uncomfortable. He hugged Hoss and touched her arms multiple times. He frequently commented that he thought Hoss was a "wild party girl" and that he wanted to hear about these experiences. He stared at her over breakfast one morning. Nunez also approached Hoss and Finkelstein and asked to come back to their hotel room. Hoss walked away and Finkelstein told Nunez "No, all you would see is Amie going to sleep and me staying up and watching television." Hoss did not tell Nunez to stop hugging or touching her. She was aware of the procedure for reporting complaints at the School, including telling a manager or human resource officer or calling the hotline. Although she felt uncomfortable, she did not report his physical contact, comments or other behavior at the time.

In February of 2012, Hoss and two female co-workers were discussing their belief that another employee stared at their breasts during conversation. Nunez interjected that he would not do that because he's an "ass man." Hoss did not respond and instead returned to work. She considered the comment offensive but did not report it to human resources or other management at the time.

Later in February, when Hoss and a co-worker were walking to their cars with Nunez, Nunez said he was a swinger and talked about his sexual relations with multiple women at the same time. On another occasion, Nunez asked Hoss and two

other female co-workers "What does 'gigolo' mean?" After a co-worker explained the definition, Nunez responded that he wanted to be a gigolo. Hoss did not report any of this behavior when it happened.

Finally, on April 12, 2012, Nunez entered Hoss's cubicle where she told him she had a headache that had been bothering her for three days. He said "Maybe you are lacking in some physical activity," gyrated his hips, and then offered to "help her out and help get rid of the headache." The exchange ended when Nunez said "No, I'm going to stop myself, because that's too much" and walked away.

*Hoss's Complaint about Nunez*

On the same day, Hoss sent an email to human resources generalist Beth Dooley complaining about Nunez. It stated:

> I have been subjected to repeated comments from a male co-worker that are of a sexual nature. I've really had enough of it, and I'm honestly shocked that people think it is acceptable to talk to others that way . . . Can we talk about this tomorrow sometime?

Hoss admitted in her deposition that, to the best of her knowledge, this April 12 email marked the first time anyone in management or human resources was ever made aware of any sexual harassment of Hoss by Nunez. Dkt. 39, Exh. A, p. 127–28.

Dooley responded in an email the next day: "Of course you can come and talk to me about it. When are you available today?" Hoss met with Dooley at 10:30 a.m. on Friday, April 13, 2012, and informed her of Nunez's actions from December of 2011 through the previous day. Dooley informed Hoss there would be an investigation into her complaints and that the School might need to move Nunez. Hoss expressed

reservations about Nunez being moved, asking Dooley to not "create a lot of publicity" about her complaint and worrying about possible retaliation by Nunez. They discussed an upcoming quarterly cubicle "shake-up," which Hoss thought would resolve the issue without tipping off Nunez of her complaint. Hoss told Dooley that it would be fine to move Nunez as part of the cubicle shake-up. However, no shake-up took place. After Nunez returned from a two-day absence, Hoss noticed him acting differently around her and believed Nunez was aware of her complaint. Hoss notified the School, which moved Nunez that same day.

*The School's Investigation of Hoss's Complaint*

On Monday, April 16, 2012, Ken Wunschel, the School's employee relations manager who is located in Pittsburgh, Pennsylvania, emailed Hoss about her April 12 complaint, stating:

> Good morning Amie. I'm Ken Wunschel the Employee Relations Manager for the Great Lakes Territory which includes your campus. Beth Dooley and I spoke today regarding your concerns with Luis. I'd like to quickly touch base with you when you have a moment. If you could, call me when you can speak confidentially.

Hoss felt that Wunschel waited too long to reach out to her after she met with Dooley the previous Friday. There had been less than ten business hours pass since she spoke with Dooley, and Nunez had not engaged in any inappropriate behavior in the interim. Hoss identified eleven witnesses to Nunez's behavior. Wunschel interviewed all of the witnesses. After investigating, Wunschel believed that Nunez's actions had not risen to the level of abuse but recommended that he receive a formal warning and be reread the no-harassment policy. Wunschel also recommended that the admissions team be

6

reminded about professionalism and appropriate behavior and that they attend
harassment awareness training. The School issued Nunez a formal warning notice on
May 1, 2012, stating in relevant part:

> This letter is to serve as a formal written warning that any future
> violations of or relating to inappropriate or unprofessional conduct of any
> kind or failure to maintain an overall satisfactory level of work
> performance, will result in further disciplinary action up to and including
> termination of your employment. Furthermore, you are required take (sic)
> and successfully complete a Harassment Awareness training session no
> later than Friday, May 11, 2012.

After Hoss complained about Nunez on April 12, 2012, he ceased all
inappropriate behavior. The admissions team did attend harassment awareness
training, as recommended by Wunschel. The School did not deviate from its policy in
investigating her complaint. Hoss believes the School should have moved Nunez's
work space more promptly. Although she never objected, she also believed the School
should have moved Nunez farther away.

*The School Terminates Hoss*

Vietti decided to recommend terminating Hoss when she prepared the third
quarter review. According to Vietti's affidavit, she completed Hoss's third quarter
performance review by April 11, 2012. She did not have the authority to terminate Hoss
single-handedly. Rather, the Director of Admissions, the campus president, local
human resource manager and HR specialist all confirmed the decision.

On May 3, 2012, Dooley and Vietti met with Hoss. They informed Hoss she was
being terminated for poor performance. Hoss testified at her deposition that poor
performance is the only reason the School gave for her termination. The School also

7

terminated the employment of Assistant Director of Admissions Julie Blocher for poor performance after two consecutive quarters of "below performance expectations" reviews. Blocher had never complained of harassment.

## II. Legal Standard—Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

### III. Analysis

Hoss claims that the School should be held liable for allowing a hostile work environment and retaliation. The court addresses Hoss's claim of hostile work environment first and then addresses her retaliation claim.

*A. Hostile Work Environment Sexual Harassment*

Hoss claims that her co-worker Luis Nunez sexually harassed her and that the School should be held liable under Title VII for allowing his actions and fostering a hostile work environment. In determining whether an actionable hostile work environment existed, the court looks to all the circumstances, to see if the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment, and whether the plaintiff was subjected to this abusive environment because of her gender. *Juarez v. Utah,* 263 Fed. App'x 726, 739 (10th Cir. 2008) (citing *Montes v. Vail Clinic, Inc.,* 497 F.3d 1160, 1169–70 (10th Cir. 2007)).

"Employers are not automatically liable for harassment perpetrated by their employees." *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). "The company, as opposed to the individual directly responsible for the misbehavior, is liable, on a negligence theory, 'if it knew or should have known about the conduct and failed to stop it.' " *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759 (1998)). "Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first, into the employer's actual or

constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998).

The School is entitled to judgment as a matter of law on Hoss's claim of a hostile work environment. Even if she could establish sufficiently severe or pervasive conduct by Nunez, which the court does not address, Hoss cannot establish that the School had actual or constructive knowledge of such conduct. Nunez's conduct that Hoss complained about took place from December of 2011 through April 12, 2012. Hoss did not complain to the School until April 12, 2012, and she provides no evidence that the school knew or should have known about the conduct before she reported it. No reasonable jury could find actual or constructive knowledge of a hostile work environment by the School, so the School is entitled to summary judgment on this claim.

Further, it is undisputed that the School investigated Hoss's harassment complaint immediately. She complained to human resources generalist Beth Dooley on Thursday, April 12. Dooley responded the next morning, inviting Hoss to her office to discuss the situation at 10:30 a.m. and telling her that the School would investigate the complaint. Ken Wunschel, the School's employee relations manager, contacted Hoss on Monday, April 16, to follow up on Dooley's discussion with her. The School interviewed all the witnesses Hoss provided and issued a written warning to Nunez after its investigation. The School also required the entire admissions team to attend harassment awareness training.

Finally, Hoss did not experience any further harassment after reporting Nunez to the School. This stoppage of harassment is evidence of the effectiveness of the School's response. *See Bertsch*, 684 F.3d at 1028. Although Hoss felt awkward when Nunez came back to work and knew of her complaint, the School moved Nunez's work space away from Hoss's. Most importantly, as noted above, Hoss did not suffer further harassment from Nunez or anyone else after making her initial complaint.

For these reasons, the court is unconvinced that a reasonable jury could find the School was negligent in responding to Hoss's complaint or allowing a hostile work environment. The court grants the School summary judgment on this claim.

### B. Retaliation

Hoss also claims that the School retaliated against her. Specifically, she alleges the School terminated her employment because of her sexual harassment complaint. Title VII makes it unlawful for an employer to retaliate against an employee because she has opposed any practice made an unlawful employment practice by those statutes. 42 U.S.C. § 2000e-3(a). Rarely will a plaintiff have direct evidence of a retaliatory motive; most plaintiffs attempt an "indirect," burden-shifting case. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 999–1000 & 1000, n. 8 (10th Cir. 2011). The plaintiff must first establish a prima facie case of retaliation. *See Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).  Next, an employer generally offers a legitimate, non-retaliatory reason for its decision. *Bertsch*, 684 F.3d at 1028. The plaintiff must then show that the employer's reason was a mere pretext for retaliation. *Id.* at 1028–29.

11

To establish a prima facie case for retaliation, the plaintiff must show (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Daniels v. United Parcel Serv.*, 701 F.3d 620, 638 (10th Cir. 2012). The parties stipulate that Hoss has established the first two elements of a prima facie case, as she complained of sexual harassment and was ultimately terminated. The remaining question is whether Hoss can establish a causal connection.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Hoss argues that the temporal proximity between her protected activity and the School's termination of her employment sufficiently establishes an inference of retaliatory motive. The District of Kansas recently held that temporal proximity, without more, does not raise a genuine issue of material fact whether a retaliatory motive was the but-for cause of the employment action. *Moore-Stovall v. Shinseki*, 969 F. Supp. 2d 1309, 1331 (D. Kan. 2013). The court follows this rule here. Hoss provides no other evidence of retaliatory motive.

On the other hand, several facts weigh against retaliation as the but-for cause of Hoss's termination. First, Hoss had been on notice of possible termination for her poor performance since receiving her Final Warning Notice letter dated January 30, 2012. She

12

had gone over her Fiscal Year 2012 second quarter review with Angela Vietti and understood she had underperformed in that quarter. Despite her awareness that she needed to improve her performance, Hoss's Fiscal Year 2012 third quarter review shows that she did not. The School terminated Hoss after consecutive quarters of poor performance at her job, and Hoss provides no evidence that could establish retaliation as the cause.

Additionally, Vietti decided to recommend terminating Hoss for poor performance *before* she first complained of sexual harassment. Vietti did not have the authority to terminate Hoss without first seeking approval from several others, so Hoss was not terminated until Vietti received approval. A retaliation claim fails as a matter of law when the employer makes the decision to take adverse action against an employee before the protected activity occurred. *See Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1235 (10th Cir. 2000).

Hoss also argues that the School terminated her for failing to meet recruitment quotas, potentially violating federal law. Hoss's reviews show that she failed to meet the individual recruitment goals established at the beginning of the quarter. However, in her Fiscal Year 2012 first quarter review, Hoss met expectations with her performance despite failing to meet those recruitment quotas. In her second and third quarter reviews, she performed below expectations in several areas other than individual recruitment goals, such as communication skills, attendance at meetings, problem solving and professionalism. The School evaluated Hoss on several criteria rather than focusing solely on recruitment quotas. Hoss's argument fails for the simply reason that

even if it were correct, it would defeat her Title VII retaliation claim, as the School would have terminated her for failing to meet recruitment quotas rather than retaliation for her harassment complaint.

Lodging a complaint does not protect an employee facing legitimate disciplinary action from receiving that discipline. Hoss's performance as an employee for the School was below expectations for two consecutive quarters. The School terminated another admissions employee, Julie Blocher, after two consecutive quarters of poor performance, and Blocher had not complained of harassment at any time. In effect, this similarly-situated employee was also terminated.

Vietti knew of Hoss's poor performance and determined to recommend her termination prior to Hoss's filing a complaint of harassment. As a result, Hoss cannot meet her burden of establishing but-for causation, and her prima facie case fails. No reasonable jury could find the School retaliated against Hoss for her complaint and the School is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED this 5th day of August, 2014, that the defendants' Motion for Summary Judgment (Dkt. 38) is granted.


s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE

14